UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TIRNELL WILLIAMS (2016-1109153), | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 9072 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| CHICAGO TRANSIT AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Tirnell Williams filed this *pro se* suit against the Chicago Transit Authority ("CTA") under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and Illinois law. Doc. 7. At the outset of the case, the court screened the complaint under 28 U.S.C. § 1915A and allowed the suit to proceed. Doc. 6. After being served, the CTA moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint. Doc. 27. The motion is granted, though Williams will be given a chance to replead.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Williams's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir.

2013).  The facts are set forth as favorably to Williams as those materials allow.  *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016).  In setting forth those facts at the pleading stage, the court does not vouch for their accuracy.  *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

On January 22, 2015, Williams, who is wheelchair-bound, traveled on a CTA Brown Line train.  Doc. 7 at ¶¶ 1-2.  Because the closest station to his destination, located at State and Lake, was not wheelchair accessible, he had to proceed to the Clark and Lake station.  *Id.* at ¶ 4.  The elevator on Williams's side of the platform at Clark and Lake was out of service, rendering him unable to descend to the street.  *Id.* at ¶ 5.  When Williams asked a CTA employee for help, the employee told him to take the next train to the next stop, turn around, and return to the Clark and Lake station, which would place him on the other side of the platform, where the elevator was working.  *Id.* at ¶¶ 6-7.

Williams remained on the platform so he could take the next train.  *Ibid*.  "[T]he CTA worker was not in sight when the train arrived," and Williams needed to use a ramp to board.  *Id.* at ¶ 8.  "[T]he train driver looked out of the window and [saw] that [Williams] was in a wheelchair and needed assistance due to [Williams] not getting on the train," but did not offer to help.  *Id.* at ¶¶ 9-10.  Williams was able to board the train with the assistance of another passenger.  *Id.* at ¶ 11.  The train started to move before Williams could secure his wheelchair, which resulted in his "violently f[alling] out of his wheelchair."  *Id.* at ¶¶ 12-13.

The complaint alleges that the CTA's failure to notify passengers that the Clark and Lake station's elevator was out of service was "deliberately indifferent" and that the absence of an "alternative route" for wheelchair users to leave that station violated the Rehabilitation Act.  *Id.* at 4.  The complaint also claims that the State and Lake station's not being wheelchair accessible

violated the ADA and Rehabilitation Act. *Id*. Finally, the complaint alleges that the CTA was negligent in failing to provide an alternative means for Williams to "reach ground level" at the Clark and Lake station and for failing to properly assist him when he boarded the second train, causing him to be "violently thrown to the floor." *Id*. at ¶ 15.

**Discussion**

In opposing dismissal, Williams argues that that the court's screening order under 28 U.S.C. § 1915A represents a conclusive finding that he has stated colorable claims. Under § 1915A, the court must screen complaints brought by inmates (Williams was incarcerated when he filed suit) that seek relief from a governmental entity. *See* 28 U.S.C. § 1915A(a). It is true that the court uses the Rule 12(b)(6) standard when screening complaints under § 1915A. *See Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). But screening orders are issued without the benefit of an adversarial presentation. Thus, a court holding that a complaint survives § 1915A screening may reach a different conclusion when presented with argument from a defendant. Accordingly, the court will proceed to the merits.

**I.     ADA and Rehabilitation Act Claims**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, § 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance … ." 29 U.S.C. § 794(a). "Other than some minor differences not relevant here, the statutes are coextensive," so the court

3

will for ease of exposition refer to both statutes simply as the ADA. *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014); *see also Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 279 (7th Cir. 2003) ("[T]he ADA and the [Rehabilitation Act] … run along the same path and can be treated in the same way … .").

"To establish a violation of Title II of the ADA, the plaintiff must prove [1] that he is a qualified individual with a disability, [2] that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity, and [3] that the denial or discrimination was by reason of his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (internal quotation marks omitted).

### A. Claims Relating to the Clark and Lake Station

#### 1. The Broken Elevator

The ADA's implementing regulations provide that "[a] public entity shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part." 28 C.F.R. § 35.133(a). As directed by *Foley v. City of Lafayette*, 359 F.3d 925, 929 (7th Cir. 2004), in applying the ADA to circumstances where the plaintiff alleges problems with an elevator at a train station, the court relies on Department of Transportation ("DOT") regulations specifically addressing elevator accessibility at mass transit facilities.

The DOT regulations state: "Public and private entities providing transportation services shall maintain in operative condition those features of facilities and vehicles that are required to make the vehicles and facilities readily accessible to and usable by individuals with disabilities," with "features" defined to include "elevators." 49 C.F.R. § 37.161(a). The regulations further state that an entity that operates a train station must repair accessibility features "promptly if they

4

are damaged or out of order," and that "[w]hen an accessibility feature is out of order, the entity shall take reasonable steps to accommodate individuals with disabilities who would otherwise use the feature." 49 C.F.R. § 37.161(b). That said, the regulations caution that they do "not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs." 49 C.F.R. § 37.161(c); *see also* 28 C.F.R. § 35.133(b) (same).

*Foley* explains that these regulations impose "three duties" on an entity that operates a train station with an elevator: "[1] it must maintain the elevators in operative condition, [2] it must repair the elevators promptly once an elevator malfunctions, and [3] it must take reasonable steps to accommodate an individual who otherwise would have used the elevators when the elevators are out of order." 359 F.3d at 929. As to the provision cautioning that the regulations do not prohibit isolated or temporary interruptions in service or access, the Seventh Circuit cited with approval this DOT guidance:

> The rule points out that temporary obstructions or isolated instances of mechanical failure would not be considered violations of the ADA or this rule. Repairs must be made "promptly." *The rule does not, and probably could not, state a time limit for making particular repairs, given the variety of circumstances involved.* However, repairing accessible features must be made a high priority.

*Ibid*. (quoting Transportation for Individuals with Disabilities, 56 Fed. Reg. 45,621 (Sept. 6, 1991) app. D, subpt. G, § 37.161) (Seventh Circuit's emphasis). The Seventh Circuit added that "[t]he extent of inaccessibility covered by the terms 'isolated or temporary' in 49 C.F.R. § 37.161 is likewise unclear and only determinable by considering the unique circumstances of the case." *Ibid*. After all, as the Department of Justice has observed in similar guidance: "It is … impossible to guarantee that mechanical devices will never fail to operate." *Guidance on ADA Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities*, 28 C.F.R. Pt. 26, App. C (Mar. 15, 2011) (interpreting a parallel

5

provision governing elevator service in Title III of the ADA, which covers places of public accommodation owned by private entities); *see also* Department of Justice Technical Assistance Manual for Title II, § II–3.10000, available at https://www.ada.gov/taman2.html (last visited Sept. 30, 2017) ("Mechanical failures in equipment such as elevators or automatic doors will occur from time to time. The obligation to ensure that facilities are readily accessible to and usable by individuals with disabilities would be violated, if repairs are not made promptly or if improper or inadequate maintenance causes repeated and persistent failures.").

Williams alleges only that the elevator on one side of the platform at the Clark and Lake station was broken when he tried to use it on a single day in January 2015, requiring him to travel to the next station and loop back so he could use the (working) elevator on the other side of the platform. These allegations do not give rise to a reasonable inference that there was a "frequent denial of access to disabled persons or a policy that neglects elevator maintenance," *Foley*, 359 F.3d at 929, that the CTA failed to promptly repair the broken elevator, or that the CTA did not make the repair a high priority. *See Sharp v. Capitol City Brewing Co., LLC*, 680 F. Supp. 2d 51, 59 (D.D.C. 2010) (granting summary judgment to a restaurant in a case alleging an empty ADA-complaint toilet tissue dispenser during a single visit by the plaintiff); *Tanner v. Wal-Mart Stores, Inc.*, 2000 WL 620425, at *6 (D.N.H. Feb. 8, 2000) (holding that the defendant store's single "failure to remove shopping carts and failure to properly remove ice and snow from [a] handicapped parking space does not constitute a Title III violation"). Moreover, Williams acknowledges that he was not stranded, but rather that he was able to travel to the next station and loop back to the Clark and Lake station so he could use the elevator on the other side of the platform. Under the specific circumstances described in the complaint, that solution was a

6

reasonable response to an isolated elevator outage. *See Wagoner*, 778 F.3d at 592-93.
Accordingly, Williams's allegations about the broken elevator fail to state a viable ADA claim.

### 2. The Failure to Provide Boarding Assistance on the Next Train

Williams claims that he waited for the next train so he could follow the CTA attendant's advice about looping around to access the elevator on the other side of the platform. Doc. 7 at ¶ 8. According to Williams, he did not see a CTA worker on the platform as the next train approached, and the rail operator driving the next CTA train "saw that [Williams] was in a wheelchair and needed assistance" but failed to offer assistance. *Id*. at ¶¶ 9-10. Nonetheless, Williams boarded the train with another passenger's assistance. *Id*. at ¶¶ 8, 11.

These allegations support, at best, an inference of negligence. Another passenger was assisting Williams when the rail operator saw that he wanted to board the train, so the rail operator cannot be faulted for not jumping in to offer boarding assistance as well. And Williams has not cited any legal authority suggesting that the CTA worker who informed him that he should take the next train to the next stop was obligated to remain with him and then assist him onto the train. Such "[i]solated acts of negligence by a city employee," assuming that the alleged acts were in fact negligent, "do not come within the ambit of discrimination against disabled persons proscribed by the ADA." *Foley*, 359 F.3d at 930-31 & n.3.

Even if those allegations could predicate an ADA violation, Williams could not recover damages, the only remedy he seeks. Doc. 7 at 5. Punitive damages are unavailable against the CTA. *See Planned Parenthood Ass'n/Chicago Area v. Chicago Transit Auth.*, 767 F.2d 1225, 1233-34 (7th Cir. 1985) ("The Chicago Transit Authority is a municipal corporation, and as a general rule, local public entities are immune from punitive damage awards in civil rights actions."); *Paul v. Chicago Transit Auth.*, 2017 WL 1178222, at *4 (N.D. Ill. Mar. 30, 2017).

And the Seventh Circuit has held that where, as here, an ADA plaintiff alleges only negligence, he cannot recover compensatory damages. *See Wilke v. Cole*, 630 F. App'x 615, 620 (7th Cir. 2015).

### 3. The Failure to Give an Out of Service Notification

Williams appears to allege that the CTA violated the ADA because it failed in a "deliberately indifferent" manner to notify wheelchair passengers that the elevator at the Clark and Lake station was out of service on January 22, 2015. Doc. 7 at 4. Merely parroting the term "deliberate indifference" is not enough to state a viable claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Williams attempts to cure this deficiency in a supplemental brief, asserting that "[t]he Customer Service Controller was to obtain the elevator status at the intended alighting station." Doc. 51 at 3-4. This allegation does not support an inference of discriminatory animus or deliberate indifference relating to Williams's disability; instead, at most, it suggests negligence, and therefore is insufficient to state a viable claim for damages under the ADA.

### B. Claims Relating to the State and Lake Station

Williams's complaint alleges that the CTA station at State and Lake is not wheelchair accessible, in violation of the ADA and Rehabilitation Act. That claim is dismissed without prejudice under Rule 10(b).

Rule 10(b) states: "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. … If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." Fed. R. Civ. P. 10(b). The Rule's

primary purpose is "to give defendants fair notice of the claims against them and the grounds supporting the claims." *Stanard v. Nygren,* 658 F.3d 792, 797 (7th Cir. 2011). The Seventh Circuit has affirmed the dismissal of a complaint under Rule 10(b) where a single count "asserted at least five separate causes of action." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946-47 (7th Cir. 2013); *see also Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 840-41 (9th Cir. 2000) (affirming dismissal under Rule 10(b) and noting that courts "have required separate counts where multiple claims are asserted, where they arise out of separate transactions or occurrences, and where separate statements will facilitate a clear presentation").

A court therefore may dismiss a complaint, or a portion of a complaint, that fails to abide by Rule 10(b), particularly when the complaint does not provide the defendant with adequate notice of the claims it must defend. *See Pratt v. Illinois Dep't of Corr.*, 2007 WL 1320626, at *3 (S.D. Ill. May 3, 2007) (ordering the plaintiffs to amend their complaint where "specific acts of discrimination and retaliation of which [plaintiffs] complain take different forms" and where their "claims are founded on separate transactions and occurrences," but where the plaintiffs placed those claims in the same count); *Three D Dep'ts, Inc. v. K Mart Corp.*, 670 F. Supp. 1404, 1409 (N.D. Ill. 1987) (dismissing a count asserting three different claims because "failure to present these claims in separate counts … resulted in unclear allegations and imprecise memoranda"). In so doing, the court may dismiss *sua sponte* a complaint that runs afoul of Rule 10(b). *See Bautista*, 216 F.3d at 841 (noting that "courts have used their inherent power" to dismiss a complaint for failure to comply with Rule 10(b)); *Three D Dep'ts, Inc.*, 670 F. Supp. at 1409 ("Although Rule 10(b) does not specify the appropriate remedy for violations of its provisions, courts retain the inherent power to order compliance with the rule."); *Freitag v. Edgar*, 1994 WL 10010, at *2-3 (N.D. Ill. Jan. 13, 1994).

Here, Williams presents his claim that the State and Lake station violates the ADA amid three unlabeled and unnumbered paragraphs at the end of the complaint. Doc. 7 at 4. Given the highly unclear manner in which Williams presented this claim, it is not surprising that the CTA's motion interpreted the complaint as presenting claims only about the Clark and Lake station and not about the State and Lake station. So the claim regarding the State and Lake station is dismissed under Rule 10(b), but, as noted below, Williams will be given a chance to replead that claim and, if he does so, the CTA will be expected to address it on the merits.

## II. State Law Claims

Williams's ADA and Rehabilitation Act claims are dismissed, but the dismissal is without prejudice and Williams will be given one opportunity to replead. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) (noting that "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend h[is] complaint before the entire action is dismissed"). If Williams wishes to replead his ADA and Rehabilitation Act claims, he must file an amended complaint by November 1, 2017.

If Williams does not attempt to replead his ADA and Rehabilitation Act claims, or if he tries to do so but fails, the court will exercise its discretion to relinquish its supplemental jurisdiction, 28 U.S.C. § 1367(a), over his state law claims and dismiss them for want of subject matter jurisdiction. (There is no diversity jurisdiction over the state law claims, as both Williams and the CTA are Illinois citizens.) "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) [of § 1367] if … the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish

jurisdiction over the remaining pend[e]nt state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007). This general rule has three exceptions: "when the [refiling] of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Ibid*.

None of the exceptions apply here. First, if this court relinquishes supplemental jurisdiction over the state law claims, Illinois law would give Williams one year to refile those claims in state court if their limitations period(s) expired while the case was pending here. *See Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 515 (7th Cir. 2009) (citing 735 ILCS 5/13-217). Second, as this case is at the pleadings stage, substantial federal judicial resources have not yet been committed to the state law claims. And, third, it is not clearly apparent at this early stage how the state law claims should be resolved. It follows that if Williams has no viable federal claims, relinquishing jurisdiction over the state law claims would be the appropriate course under § 1367(c)(3). *See RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479-80 (7th Cir. 2012); *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251-53 (7th Cir. 1994).

## Conclusion

For the foregoing reasons, the CTA's motion to dismiss is granted as to Williams's federal claims and denied without prejudice as to his state law claims. The federal claims are dismissed without prejudice. Williams has until November 1, 2017 to file an amended complaint. Williams must write both the case number and the judge's name on the amended complaint, sign it, and return it to the Prisoner Correspondent. Williams is cautioned that an amended pleading supersedes the original complaint and must stand on its own. If Williams

does not file an amended complaint, or if he does so and the federal claims continue to fail to state a viable claim, the federal claims will be dismissed with prejudice and the state law claims will be dismissed for lack of subject matter jurisdiction, and Williams will be free to refile the state law claims in state court.

September 30, 2017

_____
                United States District Judge