UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TIRNELL WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 9072 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| CHICAGO TRANSIT AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Tirnell Williams, currently a state prisoner, filed this *pro se* suit against the Chicago Transit Authority ("CTA") under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and Illinois law. At the outset of the case, the court screened the complaint under 28 U.S.C. § 1915A and allowed Williams's claims to proceed. Doc. 6. After being served, the CTA moved under Civil Rule 12(b)(6) to dismiss the complaint. Doc. 27. The court granted the motion but allowed Williams to replead. Docs. 67-68 (reported at 2017 WL 4467456 (N.D. Ill. Sept. 30, 2017)). Williams filed a first amended complaint, Doc. 69, and a supplement, Doc. 71, and then was allowed to file a second amended complaint, Docs. 77-78. The CTA now moves under Rule 12(b)(6) to dismiss the second amended complaint.

### Background

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred

1

to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Williams's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013). The facts are set forth as favorably to Williams as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts at the pleading stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

On January 22, 2015, Williams, who is wheelchair-bound, boarded a train at the CTA Green Line's Ashland and Sixty-Third Rail Station. Doc. 77 at ¶¶ 4-5. After disembarking at the State and Lake Rail Station, Williams discovered that the station did not have an elevator. *Id*. at ¶ 7. He boarded another Green Line train and travelled one stop to the Clark and Lake Station, where he disembarked and was again thwarted from descending to the ground level because the elevator in his direction of travel was out of service. *Id*. at ¶¶ 8-9.

Williams boarded the next train, a CTA Brown Line train, without the assistance of a CTA employee or a "much needed ramp." *Id*. at ¶¶ 10-11. "[T]he train space was not spacious enough for [Williams] to move properly without obstruction." *Id*. at ¶ 12. Because the operator set the train in motion without waiting for Williams to secure his wheelchair, Williams "was thrown to the floor with extreme impact" when the train began to move. *Id*. at ¶¶ 13-14. During all three legs of his trip, and purportedly in violation of the CTA's internal policies, no CTA employee affirmatively advised him about elevator availability at the State and Lake or Clark and Lake Rail Stations or otherwise offered to assist him. *Id*. at ¶¶ 6, 9, 11, 13, 15.

**Discussion**

As in its earlier opinion, familiarity with which is assumed, the court will refer to the ADA and the Rehabilitation Act together as the ADA, for "[o]ther than some minor differences not relevant here, the statutes are coextensive." *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014); *see also Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 279 (7th Cir. 2003) ("[T]he ADA and the [Rehabilitation Act] … run along the same path and can be treated in the same way … ."). The court will proceed to address Williams's various claims in turn.

First, as to the facilities at the State and Lake Station, the court takes judicial notice of the historical fact that the State and Lake Station dates back to 1895. *See* Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute."); BRUCE MOFFAT, THE "L": THE DEVELOPMENT OF CHICAGO'S RAPID TRANSIT SYSTEM 1888-1892 69 (1995). This is important because, although the ADA requires *new* public transportation facilities to be accessible to individuals in wheelchairs, *see* 42 U.S.C. § 12146, *existing* facilities need not be wheelchair-accessible unless they are designated as "key stations," *id*. § 12147(b), and Williams does not allege that the State and Lake Station has been so designated. The ADA also provides that, when a public entity alters an existing public transportation facility, it must ensure that the altered portions of the facility are wheelchair accessible, *see id*. § 12147(a); 49 C.F.R. § 37.43, but Williams does not allege that the CTA has made any alterations to the State and Lake Station that would have triggered an obligation to install elevators. *See Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 635 F.3d 87, 92 (3d Cir. 2011) ("[A]lthough it does not generally mandate that existing public transit facilities be made accessible, the ADA does impose specific requirements on public entities which build new facilities or make 'alterations' to existing

facilities."); 49 C.F.R. § 37.61 (providing that a public entity is not required "to make structural changes to existing facilities in order to make the facilities accessible by individuals who use wheelchairs, unless and to the extent required by § 37.43 (with respect to alterations) or §§ 37.47 or 37.51 (with respect to key stations)").

Second, as discussed in the court's earlier opinion, Williams's inability to use the elevator at the Clark and Lake Station because it was out of service on January 22, 2015 does not violate the ADA because isolated outages are not actionable. 2017 WL 4467456, at *2-3.

Third, Williams has no viable ADA claim based on his allegations that CTA employees at the Clark and Lake Station (or any other station on January 22, 2015) did not affirmatively offer him assistance, or that the Brown Line train operator set the train in motion before Williams had secured his wheelchair, because "[i]solated acts of negligence by a city employee"—assuming that the alleged acts were in fact negligent—"do not come within the ambit of discrimination against disabled persons proscribed by the ADA." *Foley v. City of Lafayette*, 359 F.3d 925, 930-31 & n.3 (7th Cir. 2004). Relatedly, the ADA does not require a carrier to offer assistance to passengers who have not requested aid. *See Arrington v. Nat'l R.R. Passenger Corp.*, 721 F. App'x 151, 155 (3d Cir. 2018) (holding that Amtrak was not statutorily required to preemptively offer assistance to a passenger with a disability who fell when she attempted to change seats by herself on a train); *Martinez v. Walt Disney Co.*, 2012 WL 12913738, at *7 (C.D. Cal. Nov. 26, 2012) (rejecting the plaintiff's contention that Disney World should be required to train its employees to ask guests with disabilities if they need help when a ride malfunctions because, "[i]n the absence of any indication that a disabled guest who becomes stuck on a ride needs (or wants) special assistance, Disney's frontline employees should not treat them any differently than nondisabled guests").

Fourth, Williams charges that CTA employees failed to follow the CTA's internal policies requiring they provide affirmative assistance to passengers. Even assuming its truth, this allegation does not establish an ADA violation, as a government entity's failure to follow its own internal practices does not create an enforceable legal duty under the ADA. *See McNelis v. Pa. Power & Light Co.*, 867 F.3d 411, 418 (3d Cir. 2017) ("Absent proof of discrimination as defined by the ADA, an employer's failure to follow its own internal policies does not in itself constitute a violation of the ADA.") (internal quotation marks omitted).

Fifth, as to his ride on the Brown Line train, Williams alleges that "the train space was not spacious enough for [him] to move properly without obstruction." Doc. 77 at ¶ 12. In response, the CTA notes that 49 C.F.R. § 38.57 requires a minimum clear space of 48 inches by 30 inches on rail vehicles, and it asserts that CTA railcars have 60 inches of maneuverable space. Doc. 82 at 8. If the CTA's facts were correct, it would appear to comply with the regulation. But the dimensions of CTA railcars are not properly presented on this Rule 12(b)(6) motion, as they are outside the four corners of the operative complaint. *See* Fed. R. Civ. P. 12(d). Any factual issue regarding the maneuverable space in the Brown Line car must be resolved at summary judgment or, in the event of a genuine and material dispute, at trial. *See* Fed. R. Civ. P. 56(b) ("a party may file a motion for summary judgment *at any time* until 30 days after the close of all discovery") (emphasis added).

Sixth, with respect to Williams's state law negligence claim, the CTA argues that it had no legal duty to affirmatively assist Williams in boarding the train or to give him unrequested information about elevator availability. Doc. 82 at 10. Williams responds by citing written CTA policies allegedly requiring such assistance, but an organization's internal rules do not create a legal duty under Illinois law where none otherwise exists. *See Zuppardi v. Wal-Mart Stores,*

5

*Inc.*, 770 F.3d 644, 652 (7th Cir. 2014) ("Although Wal-Mart's internal policy requires employees to continuously monitor [the main aisles of the store], this goes above and beyond the duties required of businesses by Illinois courts and does not create a new legal standard of ordinary care requiring the same."). Because Williams's only response to the CTA's argument for dismissal of this aspect of his negligence claim is meritless, and because he has forfeited any other argument in defense of those claims, they are dismissed. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted).

Seventh, Williams claims that the Brown Line train operator was negligent in failing to wait for him to secure his wheelchair before setting the train in motion. The CTA argues that Williams's negligent failure to lock his wheelchair, and not any alleged negligence by the train operator, proximately cause his fall. Doc. 82 at 10-12. But the court cannot make that determination on a motion to dismiss, where the plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) (internal quotation marks omitted). It is plausible that the train operator pulled out of the station so quickly that Williams did not have time to secure his wheelchair, in which case Williams would not have been negligent at all. Because Williams would have a viable claim in that scenario, this aspect of his negligence claim survives dismissal.

Williams renews his request for attorney representation, asserting he needs counsel to respond to the motion to dismiss because the prison law library is inadequate and he is not a trained attorney. Docs. 89-90. As the Seventh Circuit has observed:

> There is no right to court-appointed counsel in federal civil litigation. District courts may nonetheless ask lawyers to represent indigent litigants on a volunteer basis. Whether to recruit an attorney is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases. District courts are thus placed in the unenviable position of identifying, among a sea of people lacking counsel, those who need counsel the most.

*Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014) (citations omitted). "In deciding whether to request counsel, district courts must ask two questions: (1) [H]as the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Ibid*. (internal quotation marks omitted) (alteration in original).

Williams's motions indicate that he has made a reasonable effort to obtain counsel, so the court turns to the second question, which requires it to "consider[] both the complexity of the case and [Williams's] capabilities." *Ibid*. The primary issues remaining in this case are straightforward and largely factual: How much maneuverable space was there in the Brown Line car? How quickly did the Brown Line train operator leave the station? Did the operator see that Williams boarded the train in a wheelchair and was having trouble getting settled? Williams's lack of legal training and limited access to a law library will not be major hindrances in addressing those questions. Moreover, Williams's written submissions thus far have competently set forth his version of the facts, and there is no reason to doubt that he can continue in the same vein at summary judgment. "[T]he relevant substantive and procedural rules" can be explained to Williams at status hearings and in orders." *Ibid*. In sum, the court concludes that Williams is capable of litigating this case on his own through the summary judgment stage. His motion for representation accordingly is denied, without prejudice to renewal should the case proceed to trial.

7

Williams also requests copies of each document filed in this case, asserting that his cellmate threw out his legal materials after they accidentally became waterlogged. Doc. 92. Williams's *in forma pauperis* status does not entitle him to free copies of documents from the court's docket. *See Lucien v. DeTella*, 141 F.3d 773, 774 (7th Cir. 1998) (explaining that "[a]ll § 1915 has ever done is excuse pre-payment of the docket fees," and noting that the litigant remains responsible for paying those fees as well as any other costs of litigation). Thus, Williams's motion is denied; he must pre-pay the costs of obtaining the copies he has requested before the Clerk may send them to him.

**Conclusion**

Williams's motion for free copies is denied, and his motion for attorney representation is denied without prejudice to renewal should the case proceed to trial. Williams's federal claims, other than the claim regarding the allegedly insufficient space on the Brown Line train, are dismissed with prejudice for failure to state a claim. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) (noting that "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed"). Williams' state law claims, other than the claim that the Brown Line train operator began to move the train before Williams could secure his wheelchair, are also dismissed with prejudice for failure to state a claim. *See ibid.* The CTA shall answer the surviving portions of the operative complaint by July 12, 2018.

June 21, 2018

United States District Judge